UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
KARIM TOURE, MOHAMMED ISLAM, HERBERT      :    05 Civ 5237 (WHP)
SMILEY, JUBRIL OLUGBODGE, YOWY M. NUNEZ,  :
RAMON VALENTIN, JOHNNY ESPINAL, Individually :
and on behalf of others similarly situated,        :
                                                   :
                       Plaintiffs,                 :
                                                   :
           -against-                               :
                                                   :
CENTRAL PARKING SYSTEM SYSTEMS OF NEW     :
YORK, INC., CENTRAL PARKING CORPORATION,  :
HECTOR CHEVALIER, PATRIS FREYCINET,       :
RAJENDRA MANGAL, JOHN HARRISON, DANNY     :
BENOIT, JUAN ACEVEDO, JOHNNY CONCEPCION,  :
                                                   :
                       Defendants.                 :
                                                   :
------------------------------------------------------------------X


# DEFENDANTS' SUR-REPLY MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION AND TO CIRCULATE NOTICE OF PENDENCY AND IN SUPPORT OF MOTION TO STRIKE

## **TABLE OF CONTENTS**

Page

TABLE OF CONTENTS ..................................................................................................i

TABLE OF AUTHORITIES ........................................................................................... ii

PRELIMINARY STATEMENT ......................................................................................1

ARGUMENT.....................................................................................................................1

POINT I
    PLAINTIFFS REPLY MEMORANDUM VIOLATES THE COURT'S INDIVIDUAL
    PRACTICES AND RAISES NEW ARGUMENTS NOT SET FORTH IN THE
    OPENING MEMORANDUM THAT SHOULD BE STRICKEN OR NOT
    CONSIDERED BY THE COURT ..............................................................................1

POINT II............................................................................................................................6

    A.  Ms. Mune Can Not Be A Class Representative in this Case................................6

    B.  Plaintiffs Expanded Class Definition Should Be Rejected....................................7

    C.  Plaintiffs Are Not Adequate Representatives.........................................................8

    D.  Plaintiffs' Class Definition Should Be Rejected ..................................................12

POINT III
    PLAINTIFFS' MOTION TO AUTHORIZE SENDING A NOTICE OF PENDENCY
    SHOULD BE DENIED .............................................................................................13

CONCLUSION ................................................................................................................14

## TABLE OF AUTHORITIES

### FEDERAL CASES

*Darvin v. International Harverster Co.*,
610 F.Supp. 255 (S.D.N.Y. 1985) ............................................................................ 9

*Dickinson v. Merrill Lynch, Pierce, Fennder & Smith, Inc.*,
431 F.Supp.2d 247 (D.Conn. 2006) .......................................................................... 2

*Durant v. A.C.S. State and Local Solutions Inc.*,
460 F.Supp.2d 492 (S.D.N.Y. 2006) ........................................................................ 9

*Fox Industries, Inc v. Gurovich*,
2006 U.S.Dist. LEXIS 18684
No. 03 Civ 5166 (TCP)(WDW) (E.D.N.Y. Apr.12, 2006) ....................................... 1

*Kline v. Wolf*,
702 F.2d 400 (2d Cir. 1983) ............................................................................. 10, 11

*In re NYSE Specialists Securities Litigation*,
240 F.R.D. 128 (S.D.N.Y. 2007) ............................................................................ 11

*Marino v. Reina*,
2007 WL 632373 No. 04 Civ. 1674 (FB)(LB) (E.D.N.Y. Feb. 27, 2007) ................ 9

*McFadden v. Board of Educ. for Ill. School Dist. U-46*,
2006 WL 681054, No. 05 Civ. 0760 (N.D. Ill. 2006) ............................................ 10

*Nugent v. St. Luke's*,
2007 WL 1149979 No. 05 Civ. 5109 (JSF) (S.D.N.Y. Apr. 18, 2007) .................... 9

*Playboy Enterprises v. Dumas*,
960 F.Supp. 710 (S.D.N.Y. 1997), *aff'd*, 159 F.3d 1347 ......................................... 2

*Rector v. City and County of Denver*,
348 F.3d 935 (10th Cir. 2003) ................................................................................ 10

*Robidoux v. Celani*,
987 F.2d 931 (2d Cir. 1993) ..................................................................................... 7

*Royal Ins. Co. of America v. Deep Sea International*
2006 U.S Dist. Lexis 18992,
02 Civ. 3175 (KMW) (S.D.N.Y. March 24, 2006) .................................................. 2

*Savino v. Computer Credit, Inc.*,
   164 F.3d 81 (2d Cir. 1998) .......................................................................................... 10

*Sigmon v. Parker Chapin Flattau & Klimpl*,
   901 F.Supp. 667 (S.D.N.Y. 1995) ................................................................................. 2

## FEDERAL STATUTES

Fed. R. Civ. P. 23 ................................................................................................................. 1

5 Moore's Federal Practice 3d §23.25[2][e] (Matthew Bender 3d ed. 1997) ...................... 9

Miller & Kane Federal Practice and Procedure: Civ. 3d §1798 (2005) .............................. 8

## PRELIMINARY STATEMENT

Defendants Central Parking System of New York, Inc, Central Parking Corporation, Hector Chevalier, Patris Freycinet, Rajendra Mangal, John Harrison, Danny Benoit and Juan Acevedo submit this sur-reply memorandum in opposition to Plaintiffs' motion for certification of a class under Fed. R. Civ. P. 23(a) and (b)(3) and to circulate a Notice of Pendency of a collective action under the Fair Labor Standards Act ("FLSA"). The Court should either ignore the new arguments set forth in Plaintiffs' Reply Memorandum of Law In Further Support of Plaintiffs' Motion for Class Certification and to Circulate Notice of Pendency, dated April 27, 2007 and supporting papers ("Pl. Reply Mem." or "Plaintiff's Reply") or strike the oversized memorandum containing the new arguments. *See* Point I. In any event, the new arguments raised in Plaintiff's Reply on class certification issues still leave Plaintiffs far short of the showing required under Rule 23 (Point II) and the FLSA (Point III). This memorandum is filed pursuant to the Court's Order dated May 16, 2007 and we address only the new arguments in this memorandum. Plaintiffs' Reply should be stricken and their motion denied.

## ARGUMENT

### POINT I

### PLAINTIFFS' REPLY MEMORANDUM VIOLATES THE COURT'S INDIVIDUAL PRACTICES AND RAISES NEW ARGUMENTS NOT SET FORTH IN THE OPENING MEMORANDUM THAT SHOULD BE STRICKEN OR NOT CONSIDERED BY THE COURT

It is rudimentary that the parties are obligated to follow the rules of the court concerning the length of memorandum. *See Fox Industries, Inc v. Gurovich*, 2006 U.S. Dist. LEXIS 18684 at *4-*7, No. 03 Civ 5166 (TCP)(WDW) (E.D.N.Y. Apr. 12, 2006). On April 27, 2007, Plaintiffs filed a seventeen page reply memorandum in support of their motion. The

memorandum exceeds by seven pages the page limitation set forth in paragraph 3.C. of the Court's Individual Practices. No order has been entered allowing an oversized memorandum.

The filing of the oversized memorandum is exacerbated by the improper arguments set forth in it. It is fundamental that new matters and new arguments should not be included in reply and, if included, they should not be considered. *See Playboy Enters. v. Dumas*, 960 F. Supp. 710, 720 n.7 (S.D.N.Y. 1997), *aff'd,* 159 F.3d 1347 (2d Cir. 1998) ("Arguments made for the first time in a reply brief need not be considered by a court.") (internal citations omitted); *Sigmon v. Parker Chapin Flattau & Klimpl*, 901 F. Supp. 667, 677 n.5 (S.D.N.Y. 1995). The new arguments were all available and could have been made in Plaintiffs' initial papers. Accordingly, the Court should disregard the arguments raised for the first time in Plaintiffs' Reply or strike the Reply. *See, Royal Ins. Co. of America v. Deep Sea Int'l*, 2006 U.S. Dist. LEXIS 18992 at *2 n.1, 02 Civ. 3175 (KMW) (FM) (March 24, 2006 SDNY); *Dickinson v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 431 F. Supp.2d 247 (D. Conn. 2006).

New arguments permeate Plaintiffs' Reply. First, Plaintiffs argue that Susana Mune should be a class representative. No such argument was made in the opening brief. In fact, Ms. Mune's first declaration described her as "a plaintiff in a related case." Susana Mune Decl., dated Dec. 22, 2006. Plaintiffs' argument is not only late and improper but it is highly prejudicial. Contrary to Plaintiffs' suggestion, Mune was deposed in this case as a <u>witness</u> not as a plaintiff or a potential plaintiff. This fact was made abundantly clear at her deposition by

2

Plaintiffs' counsel who did not represent her at the deposition even though she was present. *See* Excerpts of Deposition of Susana Mune at 5:[1]

> Mr. Felder: Ms. Denver, you are not representing Ms. Mune in this particular deposition?
>
> Ms. Denver: Yes, we are representing her in a separate case. I guess we didn't talk about this deposition.
>
> Mr. Felder: It doesn't matter, because if you want to say anything, you can say anything. It doesn't matter to me if you are technically appearing for her or not.

*See also,* Mune Tr. at 58 (plaintiffs' counsel objects that "we are getting more related to Ms. Mune's case than the case that she is being deposed here for. I think we are getting a little off.") Indeed, even though counsel represented Ms. Mune in her separate case, Plaintiffs' counsel insisted that Defendants serve her with a subpoena compelling her attendance. Copeland Decl. ¶17. Finally, the deposition necessarily would have been very different if Mune were a plaintiff rather than a witness. *See id.* at ¶18.

Second, a number of the Plaintiffs seek to disavow their sworn deposition testimony. In most contexts, plaintiffs cannot simply distance themselves from testimony given under oath. *See supra* Point II C. To have the individuals seeking to represent a class disavow their own

---

[1] Deposition transcripts will be referred to by same short form as used in Defendants' Memorandum of Law in Opposition To Plaintiffs' Motion for Class Certification and to Circulate Notice of Pendency (hereinafter "Def. Br.") and are annexed as Exhibits to the Copeland Declaration, dated April 20, 2007, marked as follows: Olugbode - D, Smiley - E, Islam - F, Toure – G, Nunez – H, Espinal – I, Valentin – J, Albizu – M, and Mangal – N. Additional deposition transcripts are annexed to the Declaration of Edward Copeland, dated May 25, 2007 as follows: Mune – A, Smiley – B and Toure – C.

3

testimony in a reply underscores the unfairness: for example, Plaintiff Nunez testified extensively about his experience (or claimed experience) with respect to overtime and it was quite different than the experience claimed by Plaintiffs Smiley and Toure in their depositions. For Nunez to disavow his testimony on reply is improper and at the very least is intended to deprive Defendants of a fair opportunity to present their arguments. Similarly, the attempts by other named Plaintiffs, such as Islam, to disavow their testimony smacks of the very same type of litigation tactics designed to deprive defendants of a fair opportunity to litigate this case. For example, Islam claims in the guise of a reply, that Smiley did not not tell him that he "lied to any managers regarding the incident" involving a damaged car. Islam Decl. ¶ 11. But Islam's testimony was clear as can be and it is equally clear that he understood exactly what he was testifying to:

> Q: Did anyone tell you about – did anyone talk to you about the accident?
>
> A: One guy, his name is Mike, and you know, Smiley wanted to save one guy, therefore he should lie – Smiley wanted to save one guy and he lied and that is why Smiley transferred ....
>
> Q: That is what Mike told you?
>
> A: Mike didn't tell me. I asked Smiley.
>
> Q: That is what Smiley told you?
>
> A: Yes.

Islam Tr. at 261. Not only did the answer come in response to an open-ended question that Islam clearly understood, he repeated the same answer a number of times as Defendants sought to explore the response. Islam Tr. at 261-264.

Third, Plaintiffs' latest affidavits contain new arguments and assertions and are often contrary to their testimony and are misleading. For example, Plaintiff Olugbode makes

4

assertions about the night shift at Penn Plaza and the number of employees as if he were present throughout the period. He conveniently omits to state that he did not work at One Penn Plaza after September 2001 and that his complaint – like the other Plaintiffs – is that hours were reduced prior to the fall of 2001 as part of the supposed harassment. *See* Olugbode Tr. at 67; Compl. at ¶ 90. Smiley's new declaration contains numerous factual allegations that were conveniently omitted from his earlier declaration. Smiley's new declaration contradicts his own testimony on his claimed overtime; he testified that when he worked more than eight hours in a day, he often came in late or left early the next day to balance the hours "just about every week." Smiley Tr. at 149-152. Toure's new declaration suffers from the same problems: it contains assertions that were not in the first declaration and even though it now covers a shorter period of time, he still argues that there were "46 garage attendants, cashiers and porters on the night shift." Toure Decl. dated April 26, 2007 at ¶ 6. Toure acknowledges that the only porter is someone who worked from 11:00 a.m. to 7:00 p.m., *id.* at ¶ 9. Clearly, Toure has his own unique notion of who was on the so-called night shift which is contrary to the testimony that the so-called night shift began in late afternoon and extended for eight hours until 11:00 p.m. or midnight. *See* Def. Br. at 4.

Fourth, Plaintiffs now attempt to expand the purported class beyond the scope of the Complaint. Plaintiffs <u>never</u> moved to amend the Complaint to add Mune or expand the putative class and their counsel instead chose to file a separate case in the state court system that was later removed to this Court. From the first time that Plaintiffs' counsel raised the question of Mune and Anderson, the second named Plaintiff in the *Mune* action – initially without indicating the precise claims that they asserted – because of the ongoing discovery and discovery deadlines, Defendants' position was that Plaintiffs should make a motion if they so desired. Plaintiffs'

5

counsel never made a motion and instead told Defendants that they would file a separate lawsuit in state court. *See* Copeland Decl. at ¶13. During discovery on the class and collective action issues, Defendants made extensive efforts to provide relevant discovery as to attendants only and to identify individuals who were not attendants so that data and information that was produced would be relevant to the claims asserted by Plaintiffs. In doing so, Defendants and counsel spent hundreds of hours reviewing data, designing searches to compile electronic data to produce to Plaintiffs and reviewing hard copies of files to identify the people who were attendants and to separate data for those individuals from other employees who were not attendants. These efforts were enormously burdensome and were a direct result of the definition of the class as restricted to attendants. Copeland Decl. at ¶4. Plaintiffs' argument on reply that the class should be expanded to include cashiers or porters should not be considered.

Beyond question, Plaintiffs have sought to raise new arguments and new matters which should have been raised, if at all, in their initial memorandum. The Court should either ignore these arguments or strike the oversized memorandum containing them.

## POINT II

### PLAINTIFFS STILL FAIL TO SATISFY THE REQUIREMENTS OF RULE 23

In an effort to shift direction, Plaintiffs' reply memorandum sets forth a number of new arguments. We address the various arguments below.

### A.   Mune Can Not Be A Class Representative in this Case

Plaintiffs assert that Susana Mune should be a class representative. Reply Mem. at 1. Mune is not a member of the class and Plaintiffs never moved to amend the complaint to expand the action to include cashiers such as Mune. Copeland Decl. at ¶11. Plaintiffs' version of the supposed coordination of the two cases is pure fiction: Plaintiffs' counsel filed a separate action

6

in state court on or about October 10, 2006; the class discovery in this action ended ten days later on October 20, 2006. Copeland Decl. ¶15. The effort that has been made to coordinate the two cases has been by Defendants who removed the case to federal court and designated it as a related case. Copeland Decl. ¶19. The cases remain separate actions with different Plaintiffs and Plaintiffs cite no authority that would allow a plaintiff in another lawsuit who is not even within the putative class to become a class representative.

### B. Plaintiffs' Expanded Class Definition Should Be Rejected

Plaintiffs assert that they may expand the class definition seemingly to include "attendants, cashiers and porters." Pl. Reply at 1. They argue that the Court is not bound by the class definition in the complaint. Plaintiffs simply ignore that the cases upon which they rely involve certifying a class which is narrower than the class alleged in the complaint. For example in *Robidoux v. Celani*, 987 F. 2d 931, 933 (2d Cir. 1993), relied on by Plaintiffs here, the plaintiffs alleged a class of applicants for three public assistance programs complaining of delays in processing applications. When the plaintiffs failed to make a showing of any delays in one of the three programs, the district court held that they failed to meet the typicality requirement. The Court of Appeals disagreed because the plaintiffs made a showing of delays with respect to the other two programs. The Court held as follows (with the language conveniently omitted by Plaintiffs underlined): "A court is not bound by the class definition proposed in the complaint and should not dismiss the action simply because the complaint seeks to define the class too broadly." *Celani*, 987 F.2d at 937. Here Plaintiffs try to do something very different – they seek to define the class more broadly than the complaint, and more broadly than had been the basis for discovery on class issues.

7

Plaintiffs nonchalantly suggest that the case could be consolidated with the *Mune* case, the complaint could be amended or someone could seek intervention. Pls.' Reply at 7. The simple fact is that none of those motions were made in a timely fashion (or at all) and the case proceeded through discovery on the class issues on the basis that the putative class included only attendants. Defendants will be prejudiced in this case if the putative class is suddenly expanded because Defendants expended substantial resources in complying with discovery and identifying and producing appropriate information as to attendants. Whether Plaintiffs like it or not, the Federal Rules of Civil Procedure apply to class actions just like other civil actions and they should not be allowed to simply ignore these rules. *See* Wright, Miller & Kane Federal Practice and Procedure: Civ. 3d §1798 at 216 (2005).

Plaintiffs' remaining argument concerning Mune and Anderson is creative but without any factual merit. *See* Copeland Decl. ¶¶8-16. Indeed, Plaintiffs did not present Mune's state court complaint to Defendants' counsel until late September 2006 near the end of discovery. Mune's filing a consent in this case is of no moment for a number of reasons. First, she could not consent to be a Plaintiff in a case in which she is not within the collective group then or at any other time, and the consent at best would relate only to the FLSA claim.

Indeed, the only real point this raises is that Plaintiffs' counsel took no action for months and allowed the case to proceed as to attendants only throughout the substantial discovery.

### C.     Plaintiffs Are Not Adequate Representatives

Plaintiffs attempt to weave their way through the various reasons why they are not adequate representatives. The mere fact that Plaintiffs were not sensitive to the substantial problems they each present – and therefore did not address any of these issues in their initial papers – by itself should give one pause about their adequacy to represent the class. But these

8

problems and, in particular, Plaintiffs' explanations, show that they are not and can not be adequate representatives.

Plaintiffs' attempt to evade the consequences of their deposition testimony by offering *post hoc* affidavits contradicting and disavowing their testimony fails as a matter of law. Contradictory sworn statements submitted by a party who seeks to disavow prior deposition testimony must be disregarded.[2] *See Nugent v. St. Luke's*, 2007 WL 1149979 at *20, No. 05 Civ. 5109 (JSF) (S.D.N.Y. Apr. 18, 2007) (disregarding affidavit which conflicted with prior deposition testimony); *Marino v. Reina*, 2007 WL 632373 at *5, No. 04 Civ. 1674 (FB)(LB) (E.D.N.Y. Feb. 27, 2007) (disregarding statements in affidavit which directly contradicted prior deposition testimony). Moreover, to the extent the affidavits attempt to add to prior testimony, they similarly must be disregarded. *See Durant v. A.C.S. State and Local Solutions Inc.*, 460 F.Supp. 2d 492, 494 (S.D.N.Y. 2006). Plaintiffs are not allowed to simply say that they have a different story now.

Plaintiffs attempt to tailor their affidavits to fit their current perceived need in a way contrary to their prior testimony strongly undermines Plaintiffs' capacity to adequately represent the putative class. As detailed in the opposition, Opp. Br. 17-20, "[t]his type of inconsistent testimony could create serious problems with respect to plaintiff's credibility and could become the focus of cross examination and unique defenses at trial, to the detriment of the class. These credibility problems are a basis for denying plaintiff's motion to be named class representative." *Darvin v. Int'l Harverster Co.*, 610 F. Supp. 255, 256 (S.D.N.Y. 1985), *See also*, 5 Moore's

---

[2] While much of the authority in this area concerns summary judgment motions, the same concerns that a party not be allowed to abandon prior testimony to fit the perceived needs of the moment should lead to the same result here.

9

Federal Practice 3d §23.25[2][e] at 23-141 ("Any dishonesty or lack of credibility on the part of the class representatives may create defenses against them or raise doubts about their ability to fulfill their fiduciary obligations as class representatives, vitiating the adequacy of their representation."). Given the substantial extent to which Plaintiffs have now contradicted their own testimony, such conflicts will inevitably become a focus to the litigation, thereby "vitiating the adequacy of their representation." When a plaintiff who seeks to become a class representative seeks to disavow the testimony, the effort itself demonstrates that the individual is not an adequate representative of the class.

It is no solace to Plaintiffs such as Islam and Nunez to claim that they did not understand their testimony; if anything their "explanation" causes even greater concern. Where a proposed class representative tenders affidavits which conflict with his prior deposition testimony, the individual must be deemed inadequate. *See Rector v. City and County of Denver*, 348 F.3d 935, 939 (10th Cir. 2003) (decertifying class *sua sponte* where class representative offered an affidavit which conflicted with his deposition testimony), *See also, McFadden v. Board of Educ. for Ill. School Dist. U-46*, 2006 WL 681054, No. 05 Civ. 0760 (N.D. Ill. 2006) (finding potential class representative inappropriate where she submitted a sworn statement which contradicted her deposition testimony). The court need not find that Plaintiffs filed false affidavits, for even suspicious deposition testimony of a proposed class representative subjects the Plaintiffs to "sharp attack," thereby creating issues which unduly subvert the class's substantive claims. *Kline v. Wolf*, 702 F.2d 400, 403 (2d Cir. 1983) (denying class certification). *See also, Savino v. Computer Credit, Inc.*, 164 F.3d 81 (2d Cir. 1998) (denying class certification because "[t]he fact that Savino offered differing accounts about the letters that form the very basis for his lawsuit surely would create serious concerns as to his credibility at any trial."). Here for example, Islam

not only gave the testimony, he admits reviewing the transcript. Islam Decl., dated April 26, 2007 at ¶ 10.

To the extent Plaintiffs seek to avoid the inconsistencies in their testimony by arguing the existence of confusion and discrepancies, even if the product of innocent mistake, it still calls into serious question a potential class representative's credibility, thus rendering him inadequate. *In re NYSE Specialists Secs. Litig.*, 240 F.R.D. 128 (S.D.N.Y. 2007); *See also, Kline v. Wolf*, 702 F.2d 400, 403 (2d Cir. 1983) (finding that even an innocent inconsistency will "cast a shadow" upon the prospective representative and thus unduly burden the class). Here, however, the circumstances of the testimony, the review of transcripts and the sudden change of testimony after Defendants filed their opposition strongly suggests the change is far from innocent.

Plaintiffs' remaining argument is devoid of merit. First, Plaintiffs assert that as long as the credibility issue relates to issues other than the overtime claims, their credibility is irrelevant. To Plaintiffs, the fact that Islam's and Nunez's deposition testimony contradicts Smiley and Toure's testimony on a critical issue in the case does not matter. Again, whether Plaintiffs like it or not this litigation involves the discrimination claims as well as the overtime claims so that the litigation will focus on these direct conflicts. *See* Def. Br. at 19. Each Plaintiff is consistent on the fact that another individual told or encouraged Smiley to lie to the managers about the key accident. The inconsistency is that Islam testified that Smiley (and Toure) told Islam that Smiley in fact lied to the managers to protect the other employee before later telling the truth. Islam Tr. at 259-65. Smiley adamantly denies ever lying, Smiley Tr. at 214, and Toure denies making any statement. Toure Tr. at 448-57. To the contrary, Toure claims that the whole incident with Smiley was a set up designed to get Toure. *Id.* at 471-77. If, as Islam testified, and he apparently told Nunez, Smiley in fact lied, then both Smiley and Toure, are substantially

11

undercut. In all events any trial will feature this dispute as a critical and major issue undermining four of the named Plaintiffs.

Plaintiffs' assertion that their credibility is not undercut on the class claims is also wrong as a matter of fact. This pattern of directly contradicting testimony is also present in Smiley's testimony concerning his hours. Smiley testified that he had kept records of the number of hours that he worked overtime. Smiley Tr. at 82-89. After the commencement of this case, he threw the records out, but testified that it did not matter because Toure had records and they worked virtually the same hours. Smiley Tr. at 82-89. Toure straightforwardly denied having any such records. Toure Tr. at 238-47. Clearly, this issue of credibility will permeate all the claims including the overtime claims in the case, as Plaintiffs well know.

### D.   Plaintiffs' Class Definition Should Be Rejected

In a number of respects Plaintiffs' definition of the purported class keeps changing. For example, it appears that Plaintiffs are only making claims for those attendants working during the months of "September to April." Islam Decl., dated April 26, 2007, at ¶ 7. Plaintiffs now exclude from their class a number of "Haitians." *See* Pls.' Reply at 2. By excluding Haitians, Plaintiffs contradict their own complaint. *See* Def. Br. at 18. More importantly, the more Plaintiffs explain, the clearer it is that the individuals in the purported class are ascertainable only by Plaintiffs' subjective judgment and that Plaintiffs' new explanation is a *post hoc* rationalization.

## POINT III

## PLAINTIFFS' MOTION TO AUTHORIZE SENDING A NOTICE OF PENDENCY SHOULD BE DENIED

Plaintiffs' only argument seems to be that the showing required under the FLSA at this stage is so minimal that they have somehow met that threshold. As to this portion of the argument, no further response is required.

But Plaintiffs also argue that discovery was minimal in this action as if this is some excuse for the weak showing. Plaintiffs' argument is wholly without merit. As the Court will recall this action began with Plaintiffs making broad allegations about overtime violations in hundreds of parking locations and broad allegations of discrimination in hundreds of parking locations. Copeland Decl. at ¶7. Despite attempts to convince Plaintiffs to meaningfully narrow the case, Plaintiffs insisted on broad class discovery and Defendants produced extensive electronic information and physical documents on all employees in hundreds of garages over a period of years. Copeland Decl. at ¶7. In the end, Plaintiffs dropped all the class discrimination claims and dropped all the class overtime claims for FLSA collective action claims except as to a single shift at a single garage for a period of nine months of the year. Copeland Declaration ¶7.

An enormous amount of time and effort was spent in this action on claims that have no substance. After all this burdensome discovery, after all the data and information that was produced on hundreds of garages and thousands of attendants, Plaintiffs' argument that they made a bare minimal showing should be rejected.

Finally, even Plaintiffs' newly modified proposed notice should be rejected. The modified proposed notice is improper for at least the following reasons. First, all references to cashiers and porters should be eliminated. Second, the notice still does not set forth the correct dates as Plaintiffs acknowledge that the class period should end as of March 2006 and only

13

include the months September through April. Third, Paragraph 5, which describes the "effects of joining their suit," should be eliminated or revised insofar as it is inaccurate and misleading, and appears to take away from any potential plaintiffs the right to participate in this action. Indeed, given that Plaintiffs have already announced their waiver of certain statutory rights, it would seem appropriate for the notice to make the individuals aware of the waiver. These remain just a few of the faults in the proposed notice. Although the court should not authorize such a notice, if it does believe that a notice should be permitted, we again suggest that these and other problems in the notice should be resolved in the first instance by the parties.

## CONCLUSION

For all of the above stated reasons, Plaintiffs' motion should be denied and the Plaintiffs' Reply stricken or the new arguments should not be considered..

Dated: New York, New York
       May 25, 2007

Respectfully submitted,

THELEN REID BROWN RAYSMAN &
STEINER LLP

By: _____
    Edward Copeland
875 Third Avenue
New York, New York 10022
(212) 603- 2000
Attorneys for Defendants

<u>On the Brief</u>

Aaron Lauchheimer (admission pending)
Shamiso Maswoswe (admission pending)